DIANE WELTON JENSEN, Plaintiff-Appellant, v. U S A A PROPERTY AND CASUALTY INSURANCE COMPANY, Defendant-Appellee.

Second District   No. 2—92—0773

Opinion filed June 11, 1993.

Robert J. Hauser, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellant.

Esther Joy Schwartz, of Stellato & Schwartz, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Diane Welton Jensen, appeals the order granting summary judgment for defendant, U S A A Property and Casualty Insurance Company (USAA). Jensen argues on appeal that USAA's offer of underinsured motorist coverage pursuant to section 143a—2 of the Illinois Insurance Code (the Code) (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2 (now codified, as amended, at 215 ILCS 5/143a—2 (West 1992))) was inadequate because the offer was both unintelligible and ambiguous.

Jensen was injured in an automobile accident on January 16, 1988. The other driver, whose vehicle struck Jensen's vehicle, was insured with American Family Insurance with bodily injury liability limits of $25,000 per person. Jensen and American Family settled her claim against the other driver for the policy limits of $25,000.

Jensen then sought additional coverage under her own automobile insurance policy with USAA. The policy, effective from December 1, 1987, to July 1, 1988, provided bodily injury liability coverage of $300,000 per person and $500,000 per occurrence and uninsured motorist coverage of $15,000 per person and $30,000 per occurrence. Be-

cause uninsured motorist coverage was provided at the same limits as the minimum liability coverage required for an automobile insurance policy in the State of Illinois at the time that the policy was issued (see Ill. Rev. Stat. 1985, ch. 95½, par. 7—203 (now codified, as amended, at 625 ILCS 5/7—203 (West 1992))), no underinsured motorist coverage was provided in Jensen's policy.

USAA alleges, and Jensen seems to agree, that USAA mailed Form 999IL CIC (the form) to Jensen, along with her automobile insurance policy. There was some question at the trial level whether Jensen received the mailing, but that contention has been abandoned by Jensen on appeal. The form provided, in pertinent part:

### "ILLINOIS AUTO INSURANCE

We are pleased to serve your auto insurance needs, and we want to make sure you are getting the coverage you need. In the explanation below, Extended Benefits, Uninsured Motorists and Underinsured Motorists are discussed. See order form on back.

### A REMINDER!

The information in this form is a brief, general discussion. Coverages are subject to all the provisions and exclusions contained in your insurance policy. PLEASE READ YOUR POLICY FOR DETAILS OF COVERAGES.
*** 

### UNINSURED/UNDERINSURED MOTORISTS COVERAGES
Uninsured Motorists Coverage (UM)

- is mandatory in limits of at least $15,000/$30,000
- protects if you are injured by an uninsured motorist who is at fault
- protects against injury caused by a hit-and-run driver
- provides an OPTIONAL coverage, if you do not have Collision coverage, to protect against damage, up to $10,000, to your insured vehicle caused by an uninsured driver you can identify (subject to a $250 deductible that you pay).
- once reduced, future renewals will remain the same.

Underinsured Motorists Coverage (UIM)

- must be selected in same limit as UM, whenever UM limits exceed the minimum required ($15,000/$30,000).
- pays for injury caused by a motorist with liability limits less than your UIM limits and less than the amount of damages you are entitled to recover. His policy pays its limits first, then

yours pays the lesser of (1) any remaining loss, or (2) the difference between his liability limits and your UIM limits. In any event, the combined payments cannot exceed your UIM limits.

DETERMINING THE UM/UIM LIMITS YOU NEED

Consider sources of protection you already have. UM/UIM applies to auto accidents and should be looked upon as supplemental protection to a full-range income protection and medical expense program. Consider,

- income source. An active duty officer will not need as much protection as a self-employed person.

- the portion of income derived from investments, pensions, and annuities. These will continue.

- medical care coverage from employment sources."

The second page of the form indicated the coverage options for uninsured and underinsured motorist insurance and the cost for the coverage options. The insured was to sign and return the form after either choosing different uninsured/underinsured motorist coverage or rejecting the additional coverage. Jensen did not return this form to USAA.

Subsequently, USAA denied Jensen's claim for underinsured motorist coverage because her policy provided no such coverage. Thereafter, Jensen filed a complaint for declaratory judgment, asking the court to reform her automobile insurance policy to provide underinsured motorist coverage equal to her bodily injury liability limits of $300,000 per person. Jensen claimed that reformation was required because USAA failed to adequately offer her underinsured motorist coverage in accordance with section 143a—2 of the Code (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2 (now codified, as amended, at 215 ILCS 5/143a—2 (West 1992))).

USAA filed a motion for summary judgment, and Jensen filed a cross-motion for summary judgment. On June 23, 1992, the trial court denied Jensen's cross-motion for summary judgment and granted USAA's motion for summary judgment, concluding that USAA's offer of underinsured motorist coverage was adequate as a matter of law. Jensen then filed a timely appeal.

Jensen contends that USAA's offer of underinsured motorist coverage failed to meet the four-part test in *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, specifically, the requirement that the insured must be "intelligibly advised" of the nature of underinsured motorist coverage. She claims that the offer was ambiguous because it referred to her insurance policy for more information on

underinsured motorist coverage when the policy contained no additional explanation of that coverage. She posits that USAA acknowledged that its policy was inadequate when it subsequently amended the policy to include information about underinsured motorist coverage. She further argues that any ambiguity in the policy, and implicitly the offer of additional insurance, should be construed in favor of providing coverage for the insured.

USAA contends that its offer of underinsured motorist coverage was adequate as a matter of law. USAA claims that the form contained the essential elements required in the *Cloninger* case: an explanation of underinsured motorist coverage, the coverage options available, and the cost of the different coverage options. USAA further claims that the form's reference to the policy was in relation to other coverage explained in the form, including extended benefits coverage, replacement and medical expense coverage, and extra coverage for seat-belt use. Finally, USAA claims that its post-accident amendment to the policy to include information about underinsured motorist coverage is irrelevant in deciding whether its offer of coverage was adequate.

■■ Section 143a—2(1), as written at the time of the accident, provided that no automobile insurance policy shall be issued or renewed unless uninsured motorist coverage was "offered in an amount up to the. insured's bodily injury liability limits." (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(1) (now codified, as amended, at 215 ILCS 5/143a—2(1) (West 1992)).) The insured has a right to elect or reject the additional coverage. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(2) (now codified, as amended, at 215 ILCS 5/143a—2(2) (West 1992)).) Section 143a—2(5) provided that after July 1, 1983, no policy shall be issued or renewed unless underinsured motorist coverage is included in an amount at least equal to uninsured motorist coverage if uninsured motorist coverage exceeded the statutory minimum limits. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2(5) (now codified, as amended, at 215 ILCS 5/143a—2(5) (West 1992)).) Effective January 1, 1988, the statutory minimum limits of liability were, and continue to be, $20,000 per person and $40,000 per occurrence. (Ill. Rev. Stat. 1987, ch. 95½, par. 7—203 (now 625 ILCS 5/7—203 (West 1992)).) Viewing these sections together, the insurer was required to offer underinsured motorist coverage equal to the insured's bodily injury liability limits. *Orr v. Illinois Farmers Insurance Co.* (1991), 210 Ill. App. 3d 1015, 1024.

In *Cloninger* (109 Ill. 2d 419), our supreme court, relying on *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, and *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318

N.W.2d 849, adopted the following four-part test to determine if the offer of underinsured motorist coverage was adequate:

"(1) notification must be commercially reasonable if the offer is made in other than face-to-face negotiations; (2) the limits of the optional coverage must be specified and not set forth in general terms; (3) the insured must be intelligibly advised by the insurer of the nature of the option; and (4) the insurer must advise the insured that the optional coverage is available for relatively modest premium increases." (*Cloninger*, 109 Ill. 2d at 425-26.)

An offer must satisfy all four requirements to be adequate under the Code. (*Orr*, 210 Ill. App. 3d at 1025.) However, the "meaningful offer test" is no longer applicable to policies renewed or issued after January 1, 1990. Section 143a—2(1) was amended to require insurance companies to provide uninsured motorist coverage equal to bodily injury liability limits unless "specifically rejected" by the insured. Ill. Rev. Stat. 1991, ch. 73, par. 755a—2(1) (now 215 ILCS 5/143a—2(1) (West 1992)); *DeGrand v. Motors Insurance Corp.* (1992), 146 Ill. 2d 521, 533.

Summary judgment should be granted only when the pleadings, depositions, admissions and affidavits show that there is no genuine issue of material fact and the moving party, as a matter of law, is entitled to judgment. (*Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 433.) The facts in the pleadings and affidavits are to be liberally construed in favor of the nonmoving party. *Richter v. Burton Investment Properties, Inc.* (1993), 240 Ill. App. 3d 998, 1001.

Moreover, the interpretation of insurance policies is governed by general contract law. (*Gonzalez v. State Farm Mutual Automobile Insurance Co.* (1993), 242 Ill. App. 3d 758, 762.) The court's determination of whether a contract is ambiguous is a question of law. (*Allstate Insurance Co. v. Boston Whaler, Inc.* (1987), 157 Ill. App. 3d 785, 789.) The interpretation and construction of an unambiguous contract is decided by the court as a matter of law. (*Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440, 447.) If the court determines that the contract is ambiguous, then its construction is a question of fact to be determined by the fact finder. (*Whitlock*, 144 Ill. 2d at 447.) However, all doubts and ambiguities should be construed in favor of the insured. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 74.

■ Although the form was not technically a part of the policy, we believe that it is incorporated into the insurance policy and is subject

to the principles of construction discussed above. Illinois courts have held that descriptive brochures and booklets may be treated as part of the insurance policy. (*Dobosz v. State Farm Fire & Casualty Co.* (1983), 120 Ill. App. 3d 674, 678-79.) So, also, we believe a form sent with the insurance policy is incorporated into the policy. See *St. Paul Insurance Co. v. Armas* (1988), 173 Ill. App. 3d 669, 674 (where insurance contract consists of policy and other accompanying documents executed as part of one transaction, they are construed together to determine the meaning of the insurance contract).

■ With the above principles in mind, we hold that summary judgment for USAA was improper because the form sent by USAA discussing uninsured/underinsured motorist coverage was ambiguous. Specifically, it is unclear whether the form would be construed by a reasonable insured as an *offer* of uninsured/underinsured motorist coverage in an amount equal to her bodily injury liability limits.

The cases cited by USAA holding that the offers of either uninsured or underinsured motorist coverage were adequate as a matter of law all involved correspondence containing language that makes it reasonably clear that uninsured/underinsured motorist coverage is being *offered. Overholt v. McDaniel* (D.D.C. 1991), 765 F. Supp. 20, 22-23 (opportunity to purchase additional uninsured motorist coverage was a "Special Offer" in accordance with Maryland law); *Orolin v. Hartford Accident & Indemnity Co.* (N.D. Ill. 1984), 585 F. Supp. 97, 101 (informed insureds of opportunity to purchase uninsured motorist coverage equal to their bodily injury liability limits and opportunity to purchase underinsured motorist coverage equal to uninsured motorist limits); *Orr*, 210 Ill. App. 3d at 1020-23 (agent sent four letters to insureds recommending that uninsured motorist coverage be increased); *Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 554 (bold letters informing insured that coverage offer was being made and also informing insured that State law required that the offer be made).

Here, the form sent by USAA defines underinsured motorist coverage and lists the coverage options and cost for each option. However, the form does not clearly notify the insured that an offer of uninsured/underinsured motorist coverage in an amount equal to his or her bodily injury liability limits is being made. (Ill. Rev. Stat. 1987, ch. 73, pars. 755a—2(1), (5) (now codified, as amended, at 215 ILCS 5/143a—2(1), (5) (West 1992)).) The initial paragraph informs the insured that uninsured and underinsured motorist coverage is "discussed." Then the form defines uninsured and underinsured motorist coverage and explains that uninsured motorist coverage is mandatory in limits of a least $15,000/$30,000 and that underinsured motorist coverage

must be selected at limits equal to uninsured motorist limits if uninsured motorist coverage exceeds $15,000/$30,000. The back of the form then supplies a list of coverage options to choose from. Viewing the form as a whole, we believe it is unclear whether reasonable insureds would know that uninsured/underinsured motorist coverage equal to their bodily injury liability limits was being offered.

Further, the reference to the policy contained in the offer creates additional confusion. The form reminds the insured to read the policy for details of coverages, a caveat which a reasonable person could interpret to mean that any coverages thereafter mentioned in the form would be included in the policy. However, the policy in force at that time contained no information about underinsured motorist coverage. We agree with USAA that the fact that it subsequently issued a revised policy to insureds including information about underinsured motorist coverage is not proof that the previous policy was insufficient. (*Cf. Hunter v. Chicago & North Western Transportation Co.* (1990), 200 Ill. App. 3d 458, 471 (post-occurrence changes are not admissible as proof of negligence).) Nevertheless, the form's reference to the policy creates ambiguity such that it cannot be said that, as a matter of law, the form satisfied the requirements of section 143a—2 of the Code.

There is no question that the form defined underinsured motorist coverage and listed the coverage options and the cost of those options, all requirements under *Cloninger* and its progeny. However, the form is ambiguous because it does not explicitly state that uninsured/underinsured motorist coverage in an amount equal to Jensen's bodily injury liability limits is being offered. While that specific phrase is not required, the insured should be alerted that the correspondence is meant as an offer. We believe this decision further promotes the legislative intent behind section 143a—2, to assist in providing adequate compensation to the injured insurance consumer. *Cloninger*, 109 Ill. 2d at 424.

Because the nature of the form is ambiguous, we are required to construe it against the insurer and in favor of the insured. (*Gonzalez*, 242 Ill. App. 3d at 764.) The remedy for an inadequate offer of underinsured motorist coverage is to reform the policy to provide underinsured motorist coverage equal to the insured's bodily injury liability limits if, also, no proper offer of uninsured motorist coverage was made. (*Rutter v. Horace Mann Insurance Co.* (1989), 190 Ill. App. 3d 467, 478.) Jensen's policy provided bodily injury liability limits of $300,000 per person. Thus, the trial court should have granted Jensen's motion for summary judgment and reformed the policy to pro-

74

vide underinsured motorist coverage at $300,000 per person. See *Watson v. Hartford Casualty Insurance Co.* (1990), 205 Ill. App. 3d 88, 95.

For the foregoing reasons, the order of the circuit court of Lake County is reversed, and the cause is remanded for entry of judgment consistent with this opinion.

Reversed and remanded.

DOYLE and COLWELL, JJ., concur.