**Thomas MASON and Katherine A. Howerton, Plaintiffs Below, Appellants,**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION, a foreign corporation, and USAA Casualty Insurance Company, Defendants Below, Appellees.**

**No. 231, 1996.**

Supreme Court of Delaware.

Submitted: June 3, 1997.
Decided: July 30, 1997.

---

Arthur Mark Krawitz (argued), and Stephani J. Ballard, of Doroshow & Pasquale, Wilmington, for Appellants.

Diane M. Willette (argued), and Stephen P. Casarino, of Casarino, Christman & Shalk, Wilmington, for Appellees.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

HARTNETT, Justice:

In this appeal from a grant of summary judgment by the Superior Court, we consider the affirmative duties imposed on an insurance carrier by 18 Del.C. § 3902(b). That statute requires a motor vehicle liability insurance carrier to make a meaningful offer to an insured of additional uninsured motorist coverage. We conclude that the insurance carrier did not satisfy its burden of showing that it had made the required offer of additional coverage because its only communications to the insured were neither timely nor sufficient. The Superior Court therefore erred in granting summary judgment in favor of the insurance carrier. We **REVERSE** and **REMAND**.

## I.

In 1992, Thomas Mason, while riding his uninsured motorcycle, was injured by a motor vehicle operated by an unidentified driver. Mason had recently returned to live with his mother, Katherine Howerton. He had allowed the insurance coverage on his motorcycle to lapse and the motorcycle had not been added to his mother's insurance policy with United Services Automobile Association ("USAA") after he returned to live with her.

As a result of his injuries from the accident, Mason filed suit seeking uninsured motorist coverage under his mother's policy. At the time of the accident, Mrs. Howerton's policy provided bodily injury liability coverage of $100,000 per person and $300,000 per accident and uninsured motorist coverage of $15,000 per person and $30,000 per accident. The Superior Court, after considering cross-motions for summary judgment, found that Mason was entitled to $15,000 in uninsured motorist coverage because his mother's policy covered him as a member of her household. The Superior Court, however, refused to reform Mrs. Howerton's policy to increase her uninsured motorist coverage to equal her bodily injury liability coverage limits of $100,000 per person and $300,000 per accident despite Mason's argument that USAA had failed to make an offer of additional uninsured motorist coverage to Mrs. Howerton as required by 18 Del.C. § 3902(b), the Delaware Uninsured Motor Vehicle Coverage statute.

## II.

USAA is a direct writer insurance carrier that communicates with its insureds only by mail and telephone. Every six months, USAA mails a packet of information to its policyholders containing a renewal policy. The packet states the amounts of coverage, and contains several pages of information explaining the policy and the different types of coverage available. Altogether, approximately 50 pages comprise the information packet.

From the inception of her policy in 1985 until the time of the accident, Mrs. Howerton made several telephone calls to USAA regarding her insurance coverage. Most notably, in 1990 Mrs. Howerton deleted Mason from her policy and, in 1991, she changed the vehicles insured under the policy. USAA

concedes that it has no records indicating that during these phone conversations a USAA representative ever asked Mrs. Howerton if she would like to increase her uninsured motorist coverage. Nor has USAA shown that it ever gave Mrs. Howerton any written notice except by use of the information packet regularly sent to her at six months intervals. Rather, USAA claims that it met its burden of showing that the statutorily required offer of additional uninsured motorist coverage was made by sending the information packets. Mrs. Howerton concedes that she did not read the information packets that she received except to verify her coverage information.

USAA did not appeal the Superior Court's ruling that Mason qualifies as an insured under Mrs. Howerton's policy. The sole issue on appeal, therefore, is whether Mrs. Howerton's policy should have been reformed so that her uninsured motorist coverage limits matched her bodily injury liability coverage limits because of the alleged failure of USAA to have made a meaningful offer of additional uninsured motorist coverage as required by 18 Del.C. § 3902. Because USAA does not contend that it made an offer of the additional coverage during its phone conversations with Mrs. Howerton, or in any mailing other than the information packets sent at six month intervals, our focus is whether the information packets constituted a timely and meaningful offer of uninsured motorist coverage as required by 18 Del.C. § 3902(b).

### III.

Two sections of the information packets at issue relate to uninsured motorist coverage. The first begins at page 41 of the 50 page packet. Included with the packet was a cover letter that stated, "Enclosed are policy documents for your records." The first section of the packet provides in pertinent part:

### AUTO INSURANCE IN DELAWARE

We are pleased to serve your auto insurance needs and we want to make sure you are getting the coverage you need. Coverages provided are for you, resident family members and guest passengers. In the explanation below, No-Fault and Unin-sured Motorists (UM) coverages are discussed. Then see order form attached if you wish to make a coverage change.

### A REMINDER!

The information in this form is a brief, general discussion. Coverages are subject to all the provisions and exclusions contained in your insurance policy. PLEASE READ YOUR POLICY FOR DETAILS OF COVERAGES.

\* \*\* \*

### UNINSURED MOTORISTS COVERAGE (UM)

—can be rejected. Once rejected, future renewals will remain the same.

—provides protection when you have an accident with an uninsured or a hit-and-run driver. It pays for bodily injury damages or death or property damage (subject to a $250 deductible) when the other person is legally liable for these damages.

—pays for injury caused by a motorist with liability limits less than your UM limits and less than the amount of damages you are entitled to recover. His policy pays its limits first, then yours pays the lesser of (1) the excess, if any, of your UM limits over his liability limits, or (2) any remaining loss. In any event, the combined payments cannot exceed your UM limits.

### DETERMINING THE UM LIMITS YOU NEED

Consider sources of protection you already have. UM applies to auto accidents and should be looked upon only as supplemental protection to a full-range income protection and medical expense program. Consider:

—income source.

—medical care coverage from employment sources.

—the portion of income derived from investments, pensions and annuities.

Page 43 of the first section of the packet indicates the coverage options for uninsured

and underinsured motorist insurance and the cost for the coverage options. The insured was directed to sign and return the form only if different uninsured/underinsured motorist coverage was selected or the additional coverage was rejected.

The second section of the information packet that discusses uninsured motorist coverage begins on page 45. It states, in pertinent part:

### DELAWARE AUTOMOBILE INSURANCE

We feel it is wise for everyone to periodically review their insurance to see if their needs are met. This form is designed to help you do just that. It also includes information concerning Discounts and Credits. Your Declarations has your current coverage by vehicle.

\* \* \* \*

### COVERAGE TO PROTECT YOU

\* \* \* \*

**Uninsured Motorists (UM)** coverage pays damages you're legally entitled to recover from the owner or operator of an uninsured or hit-and-run motor vehicle. It covers expenses resulting from injury or death as well as property damage. You and resident family members (even as pedestrians) are covered, as well as other persons occupying your vehicle with your permission.
$15,000/30,000/10,000 UM is automatically included unless you have rejected this coverage. Higher limits of UM, up to your Bodily Injury limits, are available.

### IV.

The Superior Court granted USAA's motion for summary judgment and denied Mason's cross-motion for summary judgment on

the issue of reformation of Mrs. Howerton's policy, concluding that USAA made an offer of uninsured motorist coverage in its information packet that was adequate as a matter of law. Specifically, that court found that "[t]he materials clearly and unambiguously let the insured know that she may purchase UM insurance in an amount equal to her liability limit. The price of the coverage is also provided to the insured. Furthermore, the additional UM coverage is offered on the same page, in the same manner, and with equal emphasis as the liability coverage."[1]

### V.

■ We review the grant of summary judgment de novo both as to the facts and the law in order to determine whether or not the undisputed facts entitled the movant to judgment as a matter of law.[2] This analysis requires us to examine the record to determine whether, after viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that no material issues of fact are in dispute and it is entitled to judgment as a matter of law.[3]

■ The existence of cross motions for summary judgment does not act per se as a concession that there is an absence of factual issues.[4] Rather, "a party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of its own motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party."[5] The essential facts necessary to consider the legal issues here are not disputed, however.

### VI.

18 Del.C. § 3902(b) provides in relevant part:

1. *Mason v. USAA*, Del.Super., C.A. No. 94C–09–013–SCD (April 23, 1996), Letter Op. at 13.

2. *United Vanguard Fund, Inc. v. TakeCare, Inc.*, Del.Supr., 693 A.2d 1076, 1079 (1997); *Arnold v. Society for Savings Bancorp, Inc.*, Del.Supr., 678 A.2d 533, 535 (1996).

3. *Burkhart v. Davies*, Del.Supr., 602 A.2d 56, 59 (1991); *Benge v. Davis*, Del.Supr., 553 A.2d 1180, 1182 (1989).

4. *United Vanguard Fund*, 693 A.2d at 1079.

5. *Id.*

Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.

(1) Acceptance of such additional coverage shall operate to amend the policy's uninsured coverage to pay for bodily injury damage that the insured or his legal representative are legally entitled to recover from the driver of an underinsured motor vehicle.

\* \* \* \*

■ Under this statute, the insurance carrier has an affirmative duty to offer the insured additional coverage, above the $15,000 minimum amounts, "so that the insured can make an informed decision" regarding the limits of coverage.[6] "An informed decision can be made only if all of the facts reasonably necessary for a person to be adequately informed to make a rational, knowledgeable and meaningful determination have been supplied."[7] The burden of proof in establishing compliance with the statutory mandate is on the insurer.[8]

■ An insurance carrier fulfills the duty imposed on it by 18 Del.C. § 3902(b) when it makes a meaningful offer of additional uninsured motorist coverage to the insured.[9] The elements of an offer are:

(1) an explanation of the cost of the coverage, and

(2) a communication that clearly offers the specific coverage in the same manner and with the same emphasis as was on the insured's other coverage.[10]

We previously observed in *State Farm Mut. Auto. Inc. Co. v. Arms*[11] that insurance policies typically are not negotiated agreements and that the industry has its own terminology which, despite efforts towards plain language policies, is difficult for the typical insured to understand. And the thrust behind the enactment of 18 Del.C. § 3902(b) was the potential for overbearing by the insurance companies.[12] The burden imposed by Section 3902(b) on insurers, although minimal, requires the "dissemination of important information which many consumers, other than the most diligent, might not discover."[13]

**VII.**

■ First to be considered is whether Mrs. Howerton's 1990 instruction by telephone to delete Mason from her policy and her telephone instruction in 1991 to change the vehicles covered under the policy constituted material changes which triggered an obligation by USAA to make an offer of additional uninsured motorist coverage. We hold that these changes triggered the duty to offer the additional coverage.[14]

■ USAA concedes it has no evidence that it made an offer of additional coverage during the phone conversations. Additionally, there is no evidence in the record to suggest that USAA, after the telephone changes, promptly sent a written confirmation of the policy changes or any written offer of additional uninsured motorist coverage. USAA relies solely on its mailing of the information packets every six months, al-

---

6. *Morris v. Allstate Ins. Co.*, Del.Super., C.A. No. 82C–OC–23, Taylor, J. (July 10, 1984), (Order), at 3–4, 1984 WL 3641.

7. *Id.* at 4.

8. *Patilla v. Aetna Life & Cas. Ins. Co.*, Del.Super., C.A. No. 91C–01–010, Lee, J. (April 22, 1993), Mem.Op. at 1, 1993 WL 189473.

9. *Humm v. Aetna Cas. & Sur. Co.*, Del.Supr., 656 A.2d 712, 715 (1995).

10. *Bryant v. Federal Kemper Ins. Co.*, Del.Super., 542 A.2d 347, 351 (1988).

11. *State Farm Mut. Auto. Ins. Co. v. Arms*, Del. Supr., 477 A.2d 1060 (1984).

12. *Id.* at 1065.

13. *Id.* at 1066.

14. *See Id.* at 1066 ("Consonant with Delaware law, the offer of additional coverage must be made whenever the policy is changed in such respects as the vehicle insured, the coverage provided, and/or the identity of the named insured.").

though it cannot show when the packets were mailed to Mrs. Howerton. Thus, she may have received her information packets many months after the material changes to her policy. USAA has therefore failed to meet its burden to show that it made a meaningful offer of additional uninsured motorist coverage at the time of Mrs. Howerton's material policy changes.

 In addition, the language contained in the information packet is ambiguous because of its location and its emphasis. The packet therefore could not have constituted a meaningful offer of additional insurance, even if it had been timely sent. The insurance carrier has the burden to make a meaningful offer of the additional coverage. The carrier could have easily drafted text that would have permitted the policyholder to have readily located and recognized an offer of additional insurance coverage. Instead, USAA buried the discussion of additional coverage on page 41 of a 50 page packet. The relevant language was not in a separate section nor highlighted in any manner, but loosely spread throughout eight pages of text. Most importantly, the text does not clearly state that an offer of additional insurance is being made. Rather, the materials merely obliquely indicate that additional coverage is available. If an insurance contract is ambiguous (as here) it must be construed against the insurance carrier that drafted it.[15]

We, therefore, hold that USAA did not bear its burden of showing that it made a meaningful offer of additional uninsured motorist coverage as is required by 18 Del.C. § 3902(b).

We find persuasive the reasoning of the Appellate Court of Illinois in *Jensen v. USAA Property and Casualty Insurance Co.*[16] In that case, the plaintiff sought reformation of her insurance policy to equate her underinsured motorist coverage to her bodily injury liability coverage on the basis that the form accompanying her policy did not clearly notify her that an offer of additional uninsured/underinsured motorist coverage was being made in compliance with the Illinois statute. The text of the Illinois statute and 16 Del.C. § 3902 are almost identical.[17] Also, the relevant language as to the availability of additional insurance in USAA's mailing in *Jensen* was almost identical to the language in the informational packet sent to Mrs. Howerton.[18]

### VIII.

In conclusion, we find that the Superior Court's holding that USAA made an adequate offer of additional uninsured motorist coverage as required by 18 Del.C. § 3902(b) was incorrect as a matter of law. USAA failed to satisfy its burden to show that an offer of additional uninsured motorist coverage was made by it at the time of material policy changes. In addition, the text in the information packet is ambiguous and, therefore, legally insufficient to constitute a meaningful offer of additional coverage under 18 Del.C. § 3902(b). Accordingly, we **REVERSE** and **REMAND**.

**15.** *Penn Mut. Life Ins. Co. v. Oglesby*, Del.Supr., 695 A.2d 1146, 1149–50 (1997); *Rhone–Poulenc v. American Motorists Ins.*, Del.Supr., 616 A.2d 1192, 1196 (1992); *Hallowell v. State Farm Mut. Auto. Ins. Co.*, Del.Supr., 443 A.2d 925, 926 (1982); *Steigler v. Insurance Co. of North America*, Del.Supr., 384 A.2d 398, 400 (1978).

**16.** *Jensen v. USAA Property and Casualty Ins. Co.*, Ill.App., 246 Ill.App.3d 66, 185 Ill.Dec. 676, 614 N.E.2d 1361 (1993).

**17.** Section 143a–2(a) of the Illinois Insurance Code, at the time of the accident, provided that no automobile insurance policy shall be issued or renewed unless uninsured motorist coverage was

"offered in an amount up to the insured's bodily injury liability limits."

**18.** The Illinois court held:

"There is no question that the form defined underinsured motorist coverage and listed the coverage options and the cost of those options. . . . However, the form is ambiguous because it does not explicitly state that uninsured/underinsured motorist coverage in an amount equal to Jensen's bodily injury liability limits is being offered. While that specific phrase is not required, the insured should be alerted that the correspondence is meant as an offer." *Jensen*, 185 Ill.Dec. at 681, 614 N.E.2d at 1366.