**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0626

August 15, 2017

Christian G. Heesters, Esquire
Schuster Jachetti LLP
3407 Lancaster Pike, Suite A
Wilmington, DE 19805-5543

Robert M. Greenberg, Esquire
Tybout, Redfearn & Pell
750 Shipyard Drive, Suite 400
P.O. Box 2092
Wilmington, DE 19899

Re:  *Spivey v. USAA Casualty Insurance Co.*
*Case I.D. No.: N15C-10-200 VLM*

Dear Counsel:

The insureds in this case seek to reform the insurance policy to increase the limits of their Uninsured/Underinsured Motorist ("UM/UIM") coverage liability limits to the equivalent limits of their bodily injury liability coverage. This is the Court's ruling on the parties' cross-motions for summary judgment, filed on June 1, 2017. For the reasons stated below, Plaintiffs Richard Spivey and Jerry Brooks-Spivey's Motion for Summary Judgment is **DENIED**; Defendant USAA Casualty Insurance Co. ("USAA")'s Motion for Summary Judgment is **GRANTED**.

### *Factual Background*

The facts underlying this insurance contract dispute are largely undisputed. Plaintiffs, Mr. and Mrs. Spivey, were involved in a January 20, 2013 automobile accident when another driver struck their 2006 Lincoln Town Car. The other driver was charged with DUI, driving across a median, and driving on the wrong side of the roadway. His insurance carrier tendered the statutory minimum liability insurance limits to Plaintiffs and provided an affidavit stating that there was no other insurance available to them under his policy.

Plaintiffs' vehicle was insured with USAA. From 1993 until 2013, Plaintiffs had insured a total of 28 vehicles with USAA.[1]

Several years before the accident, on June 12, 2009, USAA sent Plaintiffs a semi-annual renewal packet for their automobile insurance policy. This packet included a Declaration Page with a list of coverage limits and associated premium costs, and USAA's Form 999DE(18).[2]

Form 999DE(18) is essentially a menu of various insurance coverage options with associated costs. The form is conspicuously titled, "**DELAWARE OFFER OF INSURANCE COVERAGE.**"[3] It is eight pages in length and appears immediately after an enclosed Cover Page and Declaration Page.[4] Form 999DE(18) represents the eighteenth version of USAA's offer of additional coverage.[5]

On July 25, 2009, Mr. Spivey signed and returned his Form 999DE(18).[6] In so doing, he first selected the minimum Delaware Personal Injury Protection ("PIP") limits with a $250 deductible.[7] On the next page, he checked a box to add additional PIP coverage by $35,000/$70,000.[8] This selection meant that Plaintiffs' premium would increase by the amount listed immediately next to Mr. Spivey's selection—a semi-annual increase of $7.89.

Immediately below the additional PIP coverage selection, on the fourth page of the Form 999DE(18), there is a section entitled, "**UM COVERAGE**

---

[1] Plaintiffs' Motion for Summary Judgment at 2 (Del. Super. June 1, 2017) [hereinafter Plaintiffs' Motion].

[2] See id. at 2-3.

[3] Plaintiffs' Motion at Exhibit E, 3 [hereinafter Form 999DE(18)] (emphasis in original).

[4] Id. See also USAA's Motion for Summary Judgment at 8-9 (Del. Super. June 1, 2017) [hereinafter USAA's Motion] (describing size of Form 999DE(18)).

[5] USAA's Response to Plaintiffs' Motion at 5 (Del. Super. July 5, 2017) [hereinafter USAA's Response].

[6] Form 999DE(18) at 14-15 (copy of letter and "Acknowledgement of Coverage Selections" executed by Mr. Spivey).

[7] Id. at 16.

[8] Id. at 17.

**SELECTION OPTIONS.**"[9]  This is where the dispute in the motions lies.  The salient portion of this section is reproduced below in approximate scale:

## UM COVERAGE SELECTION OPTIONS

We initially issue UM coverage with limits equal to your Bodily Injury liability limits.  If you want to change your UM coverage limits, you must check the appropriate box below, "UM Coverage Selection Option," and sign and date the "Acknowledgement of Coverage Selections" at the end of this form.

<u>Semi-annual premium per policy</u>

**We offer** the following limits for UM.  I want the UM limits checked below:

| Limits<br>Per person/per accident | | Limits<br>Per person/per accident | |
|---|---|---|---|
| ☐ $15,000/$30,000 | $51.82 | ☐ $100,000/$300,000 | $119.88 |
| ☐ $20,000/$40,000 | $60.32 | ☐ $300,000/$500,000 | $183.31 |
| ☐ $25,000/$50,000 | $65.75 | ☐ $500,000/$500,000 | $236.68 |
| ☐ $50,000/$100,000 | $83.54 | [omitted] | |
| ☐ $100,000/$200,000 | $116.03 | [omitted] | |

NOTE:

- The UM limits you select must not exceed your policy's Bodily Injury liability limits.
- To reject UM Coverage, you must check the box below, "UM Coverage Rejection Option," and sign and date the "Acknowledgement of Coverage Selections" at the end of this form.[10]

Mr. Spivey checked the second box, selecting $20,000/$40,000 in UM/UIM coverage at an associated cost of $60.32.[11]  Prior to 2009, Mr. and Mrs. Spivey's

---

[9] *See id.* (emphasis in original).

[10] *Id.* (emphasis in original).

[11] *Id.*

UM/UIM coverage limits were consistent with their bodily injury coverage limits at $100,000/$300,000.[12]

He completed the rest of Form 999DE(18) and signed the final page, **"ACKNOWLEDGMENT OF COVERAGE SELECTIONS."**[13] Immediately above his signature, the following relevant language reads:

> **Uninsured Motorists (UM Coverage)**
> I further understand and agree that my selection of either the UM Coverage Selection Option or the UM Coverage Rejection Option shall be applicable to all vehicles on my policy, all future renewals of the policy, and all future policies issued to me because of a change of vehicle or coverage or because of an interruption of coverage, unless I subsequently request a change in coverage in writing. If I change my liability limits to an amount less than my elected UM limits, I understand that my UM limits will automatically be lowered to the same amounts.[14]

Mr. Spivey returned the packet to USAA.[15] The changes became effective on August 2, 2009.[16] The policy continued to reflect the lowered UM/UIM limits from that date until the date of the accident.[17] Between the effective date of the change and the accident date, Plaintiffs received 17 similar packets from USAA.[18]

At their depositions, Mr. and Mrs. Spivey attested to their naïveté regarding this change. Mr. Spivey stated that he generally did not review the insurance

---

[12] USAA's Motion at 13.

[13] Form 999DE(18) at 15 (emphasis in original).

[14] *Id.* (emphasis in original).

[15] *See id.* at 14-15.

[16] USAA's Motion at 14.

[17] *Id.*

[18] *Id.* at 15.

policy.[19] Instead, he believed his wife would review the policy information.[20] Mrs. Spivey testified that, "most of the time" she was the one making changes to the policy, not Mr. Spivey.[21] She infrequently communicated those changes to Mr. Spivey.[22] Nevertheless, she did not regularly review the information sent to her from USAA because she "really didn't understand it" and she typically made changes to the policy over the phone.[23]

### Procedural Background

The parties filed cross-motions for summary judgment on June 1, 2017. USAA filed its response to Plaintiffs' motion on July 5, 2017. Plaintiffs failed to timely file their response brief, and the parties agreed to augment the briefing schedule. Plaintiffs filed their response on July 17, 2017. USAA filed its reply brief on August 1, 2017.[24] A hearing on the motions occurred on August 10, 2017.

### Contentions of the Parties

The sole material issue in this Motion is whether USAA made a meaningful offer in accordance with 18 *Del. C.* § 3902(b) and Delaware case law interpreting this provision.

Plaintiffs' principal contention is that Form 999DE(18) is unclear as to its offer of additional UM/UIM coverage up to Plaintiffs' bodily injury coverage limits. First, they claim that this Court has previously ruled that USAA's Form 999DE has

---

[19] Transcript of Deposition of Richard B. Spivey at 44:9-47:3 (Aug. 15, 2016) (attached as Exhibit F to Plaintiffs' Motion).

[20] *Id.* at 46:2-7.

[21] Transcript of Deposition of Jerry Brooks-Spivey at 33:18-20 (Aug. 15, 2016) (attached as Exhibit G to Plaintiffs' Motion).

[22] *Id.* at 34:22-35:9.

[23] *Id.* at 37:5-22.

[24] Plaintiffs' counsel did not file a reply brief to USAA's Response because counsel believed that a reply brief would be unnecessarily "cumulative" and redundant. That may be so; however, counsel did not advise the Court of this position until questioned by the Court at oral argument. In the future, the Court recommends that counsel advise the Court within the timeframe set in the briefing schedule that counsel does not intend to file a brief in accordance with the Court's schedule.

failed to meet the "meaningful offer" standard, citing the decades-old cases of *Mason v. United Services Automobile Association*,[25] *Knapp v. United Services Automobile Association*,[26] and *Shukitt v. United Services Automobile Association*.[27] Plaintiffs argue that the subject version of Form 999DE in this case is "substantially similar" to the versions held insufficient in the aforementioned cases.[28] Second, Plaintiffs argue that, other than the Declaration Page, Plaintiffs' coverage for bodily injury is not listed; thus, Plaintiffs were not reasonably informed about their available coverage when changing the limits of their UM/UIM coverage. Finally, Plaintiffs contend that they were unaware of the changes to the UM/UIM coverage limits and at no time knew that their limits were augmented downward in 2009.[29]

USAA counters Plaintiffs' contention that the subject version of Form 999DE(18) is "substantially similar" to the forms held insufficient in earlier cases. USAA contends that the present form was changed because of those earlier cases and now complies with § 3902(b).[30] USAA cites *Brintzenhoff v. Hartford Underwriters Insurance Co.*[31] as a more apt analogy to the present case. Second, USAA argues that Plaintiffs' inability to comprehend or understand the effect of their selections on their UM/UIM limits is immaterial because they have a duty to read the policy.[32] What is more, USAA argues that the time between the change and the accident, as well as the number of times they added or removed cars while insured by USAA, cuts against their claims of ignorance of the insurance policy provisions.[33]

---

[25] 697 A.2d 388 (Del. 1997).

[26] 1997 WL 719340 (Del. Super. Sept. 12, 1997), *rev'd on other grounds*, 708 A.2d 631, 1998 WL 171073 (Del. Mar. 19, 1998) (TABLE) (holding trial court remedy was unauthorized under § 3902(b)).

[27] 2003 WL 22048222 (Del. Super. Aug. 13, 2003).

[28] Plaintiffs' Motion at 9, 12.

[29] *See id.* at 3-5.

[30] USAA's Response at 5, 8, 12.

[31] 2004 WL 2191184 (Del. Super. Aug. 11, 2004).

[32] USAA's Response at 15-18.

[33] *Id.*

### *Standard of Review*

On cross-motions for summary judgment under Delaware Superior Court Civil Rule 56, the court must determine whether any genuine issues of material fact exist.[34] Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[35] "All facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[36]

Thus, the standard of review on cross-motions for summary judgment is equivalent to the situation where one party moves for summary judgment.[37] Moreover, cross-motions for summary judgment "are not *per se*" concessions that no material factual disputes exist.[38] "Rather, a party [cross-]moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for the purposes of its motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party."[39]

### *Discussion*

### I.  18 *Del. C.* § 3902(b) and the "Meaningful Offer" Standard

Section 3902(b) states in part:

Every insurer shall offer to the insured the option to

---

[34] *See* DEL. SUPER. CT. CIV. R. 56(c); *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. May 31, 2013) (citing Rule 56(c)); *Wilmington Trust Co. v. Aetna*, 690 A.2d 914, 916 (Del. 1996)).

[35] *Ebersole v. Lowengrub*, 180 A.2d 467, 469-70 (Del. 1962).

[36] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Palmer*, 343 A.2d 620, 621 (Del. 1975); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. 1978)).

[37] *See United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997); *Capano*, 2013 WL 2724634, at *2; *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1050 (Del. Super. 2001).

[38] *United Vanguard Fund, Inc.*, 693 A.2d at 1079.

[39] *Id.*

7

purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.[40]

The insurance carrier has an "affirmative duty to offer the insured additional coverage, above the $15,000 minimum amounts, 'so that the insured can make an informed decision' regarding the limits of coverage."[41] "An informed decision can be made only if all of the facts reasonably necessary for a person to be adequately informed to make a rational, knowledgeable and meaningful determination have been supplied."[42] "The burden of proof in establishing compliance with the statutory mandate is on the insurer."[43] "Delaware courts have strictly enforced Section 3902(b)'s requirement that insurance carriers clearly communicate offers of additional UM/UIM coverage to their policyholders."[44]

A meaningful offer requires the insurer to demonstrate: "(1) the cost of the additional coverage; (2) a communication to the insured which clearly offers [UM/UIM] coverage; and (3) an offer for uninsured motorist coverage made in the same manner and with the same emphasis as the insurer's other coverage."[45] If the insurer fails to meet this burden, then the offer is treated as "a continuing offer for additional insurance, which the insured may accept even after the insured's accident."[46]

---

[40] 18 *Del. C.* § 3902(b) (2015 & Supp. 2016).

[41] *Mason v. United Servs. Auto. Ass'n*, 697 A.2d 388, 393 (Del. 1997) (quoting *Morris v. Allstate Ins. Co.*, 1984 WL 3641, at *3-4 (Del. Super. July 10, 1984)).

[42] *Id.* (quoting *Morris*, 1984 WL 3641, at *4).

[43] *Id.* (citing *Patilla v. Aetna Life & Cas. Ins. Co.*, 1993 WL 189473, at *1 (Del. Super. Apr. 22, 1993)).

[44] *Brintzenhoff v. Hartford Underwriters Ins. Co.*, 2004 WL 2191184, at *1 (Del. Super. June 4, 2004) (quoting *Shukitt v. United Servs. Auto. Ass'n*, 2003 WL 22048222, at *3 (Del. Super. Aug. 13, 3003)).

[45] *Id.* (quoting *Shukitt*, 2003 WL 22048222, at *3).

[46] *Id.* (quoting *Shukitt*, 2003 WL 22048222, at *3).

## II.  Delaware Cases Interpreting § 3902(b)

The leading case in this area is the 1997 decision of *Mason v. USAA*. There, the Delaware Supreme Court held that USAA failed to satisfy its burden of proving it made a meaningful offer for additional UM/UIM coverage. The insurance policy with USAA had $100,000/$300,000 bodily injury coverage, but only $15,000/$30,000 for UM/UIM coverage. USAA sent a 50-page insurance renewal packet to the insured every six months. The insured admitted that she did not read the policy.

The *Mason* Court found USAA's offer ambiguous because of the offer's location in the packet as well as the offer's lack of emphasis. First, the Court held the offer was "buried" in the fifty-page packet. The offer in the Form 999DE at that time appeared on the forty-first page. Second, the Court found the offer's language insufficient under § 3902(b):

> The relevant language was not in a separate section nor highlighted in any manner, but loosely spread throughout eight pages of text. Most importantly, the text [did] not clearly state that an offer of additional insurance [was] being made. Rather, the materials merely obliquely indicate[d] that additional coverage was available.[47]

*Knapp* and *Shukitt* followed *Mason*, both chronologically and analytically. In *Knapp*, the Superior Court similarly held that USAA failed to meet its burden of proving that it meaningfully offered the insured UM/UIM coverage to a level equal to the bodily injury liability limits.[48]

The *Shukitt* Court again found that USAA failed to meet its burden of proving it made a meaningful offer to the insured for additional UM/UIM coverage.[49] The *Shukitt* plaintiff had $15,000/$30,000 UM/UIM coverage limits and $100,000/$200,000 bodily injury liability limits. In reaching its holding that no meaningful offer was made, the Court reviewed *Mason* and *Knapp*. In contrast to *Mason*, the Court noted that, "[a]lthough the offer language in the forms sent to Mr. Shukitt was not as 'buried' in the packets as the language at issue in *Mason*, Mr.

---

[47] *Mason*, 697 A.2d at 394.

[48] The version applicable in *Knapp* was Form 999DE(02). USAA's Response at 11.

[49] The version of Form 999DE in *Shukitt* is not explicitly referenced, but is likely version seven or eight of USAA's form. USAA's Response at 11-12 & n.11.

Shukitt's Forms [sic] 999(DE) fail the most important consideration recognized in *Mason:* they fail to contain a clear offer of additional coverage."[50]

Beyond these three cases that dealt with some earlier iteration of USAA's Form 999DE, the Superior Court in *Brintzenhoff* held that another insurance company's offer of additional UM/UIM coverage to its insured was compliant with § 3902(b). Distinguishing *Mason* on its facts, the Court noted that the insurer in *Brintzenhoff* offered a tiered additional UM/UIM coverage menu with corresponding premium costs:

> Along with the other coverage choices available to Brintzenhoff, page 5 of the application lists three tiers of UM/UIM coverage amounts and the corresponding increase in premium. Following the [PIP] Coverage Options, the application also explains [UM/UIM] Coverage in the same manner as Brintzenhoff's other coverage.
>
> Unlike the application at issue in *Mason,* language in the Hartford application not only states that additional coverage is available, it also states, in bold print, that Hartford *recommends* that Brintzenhoff include UM/UIM coverage in his policy at limits equal to his liability limits. . . . On page 9 of the application, there is a Change Section for UM/UIM coverage following the Change Section for [PIP] coverage, where Brintzenhoff was able to accept the amount of UM/UIM coverage or reject it. Following this section on page 9, Brintzenhoff and his wife signed the application, thereby confirming their selections for Personal Injury Protection coverage and UM/UIM coverage.[51]

## III. Analysis

This Court finds that USAA made a meaningful offer to Plaintiffs in conformity with § 3902(b) and the string of cited cases beginning with *Mason.* The Court reaches this conclusion for several reasons.

---

[50] *Shukitt,* 2003 WL 22048222, at *4.

[51] *Brintzenhoff,* 2004 WL 2191184, at *3.

10

First, USAA has met its burden of offering the "cost of additional coverage" to Plaintiffs. Form 999DE(18) lists the available UM/UIM limits that USAA offers. On this issue, *Brintzenhoff* is directly on point. The form in that case listed the coverage options and premium costs side-by-side.[52] The same is reflected in USAA's form that Mr. Spivey reviewed before making his selection.[53] Reviewing the form, the Court is at a loss to perceive of a clearer way to list the "cost of additional coverage"—the effect of the insured selection is immediately quantifiable with the premium listed adjacent the coverage limits selected.

With respect to USAA's burden under the first of the three three-pronged § 3902(b) showing, Plaintiffs contend that Form 999DE(18) should have displayed Plaintiffs' current bodily injury liability limits. This Court disagrees. USAA repeatedly explained to Plaintiffs in the form that their UM/UIM limits depended on their bodily injury liability limits. On page 2 of Form 999DE(18), USAA explained that, "[UM/UIM coverage] is not mandatory, but must be offered to all policyholders. UM coverage limits are initially issued in limits equal to the [Bodily Injury] Liability limits. However, you may select UM coverage limits lower than your [Bodily Injury] Liability limits. . . ."[54] On page 4, in the "**UM COVERAGE SELECTION OPTIONS**" section, the note immediately following the insured's selection stated: "The UM limits you select must not exceed your policy's Bodily Injury liability limits."[55] The Declaration Page, included with every packet, also listed the level of bodily injury liability limits and UM/UIM coverage limits for Plaintiffs.[56]

While Plaintiffs are correct that it would be clearer to list the insured's then-existing bodily injury liability limits explicitly in the "**UM COVERAGE SELECTION OPTIONS**" section, this does not, *ipso facto*, defeat USAA's showing that it communicated the "cost of additional coverage" to Plaintiffs. Rather, the above-quoted language clearly implores the insured to confirm the level of bodily injury liability limits in the insured's policy before making coverage selections.

---

[52] *See id.* at *3 n.18.

[53] Form 999DE(18) at 6.

[54] *Id.* at 4.

[55] *Id.* at 6.

[56] *Id.* at 11.

11

Because the Court finds that the language clearly demonstrates the cost of additional coverage notwithstanding Plaintiffs' contention, USAA has satisfied its burden under the first prong of § 3902(b).[57]

Second, the present Form 999DE(18) is distinguishable from the earlier versions of the forms at issue in *Mason*, *Knapp*, and *Shukitt*. The form in this case now begins with the caption, **"DELAWARE OFFER OF INSURANCE COVERAGE."**[58] In *Mason* and *Knapp*, the subject form read: "AUTO INSURANCE IN DELAWARE."[59] In *Shukitt*, the first form sent to the insured was captioned, "AUTO INSURANCE IN DELAWARE," while the Court noted that this form was later amended to read: **"Offer of Insurance Coverages**."[60] Form 999DE(18) is far clearer in its caption and provides the insured with reasonable notice that the insured is being offered insurance coverage options.

Further, the location of Form 999DE(18) is distinguishable from the "buried" offers in *Mason*, *Knapp*, and, to a lesser extent, *Shukitt*. In *Mason*, the offer began on page 41. In *Shukitt*, a description of UM/UIM coverage began on page 18, but the actual offer was on page 21. Here, the form begins immediately after the Cover Page and Declaration Page. UM coverage is discussed on page two. The offer is on page 4.[61] The insured must sign on page 7, which contains another warning to the insured that he or she may be changing the policy's UM coverage limits based on

---

[57] What is more, USAA explained at oral argument that an insured, in the same form, may increase or decrease his or her bodily injury liability limits in the same way he or she may change other aspects of the policy above mandatory thresholds. Were the insured to change the bodily injury limits earlier in Form 999DE(18), a section which precedes the **"UM COVERAGE SELECTION OPTIONS"** section, Plaintiffs' proposal of explicitly providing the then-existing bodily injury limits in the latter section would be rendered moot. What confusion would arise from this new problem is hypothetical, but the Court is not convinced that Plaintiffs' proposed remedy to this section is a sound one.

[58] Form 999DE(18) at 3 (emphasis in original).

[59] *Mason*, 697 A.2d at 391 (emphasis in original). *See* USAA's Response at 10-11.

[60] *Shukitt*, 2003 WL 22048222, at *1. The *Shukitt* Court noted that this change was positive, in that the old caption "would not alert a policyholder that the packet contained an offer of additional insurance." *Id.* at *5 n.38.

[61] Plaintiffs' counsel represented at oral argument that USAA's offer began on page 23 of a 50-page packet. However, Plaintiffs' counsel could not cite to support in the record for this proposition. A review of the exhibits in both Motions reveals that USAA's offer does not begin on page 23, but on page 4.

the insured's selections. These differences in the offer's placement show that the present form did not "bury" the offer in a sea of other insurance policy provisions.

Additionally, the *Mason* Court noted that the "most important" aspect of the meaningful offer standard violated in that case was the *substance* of the "offer." In contrast to the offer found wanting in *Mason*, *Knapp*, and *Shukitt*, the "**UM COVERAGE SELECTION OPTIONS**" section here contains the following emphasized language immediately above the available coverage limits: "**We offer the following limits for UM.**"[62] The intent to convey an offer is far clearer in the subject form than the earlier versions deemed insufficient in *Mason* and its progeny. Thus, the Court finds that USAA has met its burden of showing a clearly communicated offer to Plaintiffs in conformity with the second prong of § 3902(b).

Third, and for similar reasons as stated above, the Court finds that USAA has met its burden with respect to the third prong § 3902(b): USAA made the offer to Plaintiffs for UM/UIM coverage "in the same manner and with the same emphasis as [Plaintiffs'] other coverage."[63] The PIP, additional PIP, and UM/UIM coverage selection options, among others, follow a description of the types of coverage options from which the insured must select. Page 3 of the form is entitled, "**DELAWARE ORDER FORM**," and takes the insured through the various coverage options that were explained in the preceding pages. There appears to be no sleight of hand; the form lists the coverage neutrally and logically. Moreover, after signing the acknowledgement page, the form states: "It is not the intent of this statement to limit or discourage the purchase of increased limits of liability and [PIP] coverage, or other additional coverages [that] may be available from the company."[64]

Finally, though sympathetic as the Court may be to Plaintiff's lack of sophistication when it comes to insurance contracts, this argument is undercut for two significant factual reasons.

On July 25, 2009, Mr. Spivey selected additional PIP coverage, adding $35,000/$70,000 in PIP coverage to the statutory limits. Due to the 2013 accident, Plaintiffs appropriately received the benefit of this additional PIP coverage from

---

[62] Form 999DE(18) at 6 (emphasis in original). Prior to version 12 of Form 999DE, Defense counsel represented to the Court that the "we offer" language did not appear in this section.

[63] *Shukitt*, 2003 WL 22048222, at *3 (quoting *Hudson v. Colonial Penn Ins. Co.*, 1993 WL 331168, at *3 (Del. Super. July 21, 1993)).

[64] Form 999DE(18) at 9.

13

USAA. Of course, Plaintiffs seek to reform only the UM/UIM coverage limits, as this is the relevant analysis under § 3902(b). Nevertheless, it is noteworthy that, while Plaintiffs accept as crystal clear the additional PIP coverage benefits, they contest and argue ambiguity as to the UM/UIM coverage offer. Accepting this position under Rule 56, the Court notes that Mr. Spivey's selection of additional PIP coverage benefits undermines, to some extent, this argument that Plaintiffs' were unaware with respect to the UM/UIM coverage selection section.

Moreover, the effective date of the change was August 2, 2009. Seventeen packets arrived in the mail between that date and the accident in 2013. Plaintiffs continued to augment the policy by adding or dropping certain vehicles from the policy. However, despite receiving these packets and the accompanying Declaration Page listing their UM/UIM coverage limits, they never sought to rectify what they argue today was in error. This, too, cuts against any inadvertence on the part of Plaintiffs when augmenting their UM/UIM limits.[65]

For the foregoing reasons, the Court finds that USAA has met its burden of proving it made a "meaningful offer" to Plaintiffs in July 2009 consistent with § 3902(b). As such, the Court finds that no genuine issues of material fact exist and reformation of the insurance policy to state UM/UIM coverage limits of $100,000/$300,000 is not warranted.

### *Conclusion*

Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendant USAA's Motion is **GRANTED**.

**IT IS SO ORDERED.**

Sincerely,

Vivian L. Medinilla
Judge

oc:  Prothonotary

---

[65] Moreover, the lower cost to Plaintiffs for reducing their UM/UIM coverage limits is another element that cuts against Plaintiffs' inadvertence: the difference in cost between $100,000/$300,000 in UM/UIM coverage and $20,000/$40,000 was a $59.56 reduction to the semi-annual premium based on the values reflected in the July 2009 Form 999DE(18).