**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted:  July 18, 2020
Date Decided:  October 28, 2020
Withdrawn and Reissued with Clarifications: February 26, 2021

Michael G. Owen, Esquire
Morris James LLP
803 North Broom Street
Wilmington, Delaware 19899-2328

Daniel A. Griffith, Esquire,
Kaan Ekiner, Esquire
Whiteford Taylor & Preston, LLC
405 North King Street, Suite 500
Wilmington, Delaware 19801

RE: *Erin K. Radulski v. Liberty Mutual Fire Ins. Co.*
Civil Action No. N19C-03-192 PRW

Dear Counsel:

On October 28, 2020, the Court issued a Letter Order and Opinion resolving the parties' pending cross-motions for summary judgment (D.I. 18, 19).  The Court granted Plaintiff Radulski's motion for summary judgment and denied Defendant Liberty Mutual's cross-motion for summary judgment.

Liberty Mutual filed a timely Motion for Reargument under Superior Court Civil Rule 59(e).  "Clarification is a form of relief that may be granted under Rule 59(e) where the meaning of what the Court has written is unclear."[1]  Having

---

[1]  *GPX Capital, LLC v. Argonaut Manufacturing Services, Inc.*, 234 A.3d 1186, 1191 (Del. Super. Ct. 2020).

considered Liberty Mutual's assertions on reargument and the parties' positions on hearing of Liberty Mutual's request, the Court recognizes the value of greater clarity in the Court's findings and holdings, hereby withdraws its October 28, 2020 Order and Opinion, and issues in substitution this Letter Order and Opinion.

## I.  INTRODUCTION

Plaintiff Erin K. Radulski ("Erin"[2]) brings this declaratory judgment action against Defendant Liberty Mutual Fire Insurance Company and seeks to reform her insurance policy to provide for additional uninsured/underinsured ("UI/UIM") motorist coverage.  She says she can do so now under 18 *Del. C.* § 3902[3] because Liberty Mutual failed to make a meaningful offer of additional UM/UIM coverage after a previous material change was made to her policy.[4]  Erin and Liberty Mutual have brought cross-motions for summary judgment.

Under Delaware law, an insurer must make a meaningful offer of additional uninsured/underinsured motorist coverage at the time of any material policy change.[5]  An offer is not meaningful where, if ever, it is received only many months after a material change to an insurance policy and where it fails to convey the

---

[2]  As will be clearer later on in this opinion, the Court must explain the roles Mrs. Radulski and her late husband had in dealing with their insurer, Liberty Mutual.  Therefore, to avoid confusion, the Court refers to each of the Radulskis by her or his first name.  No undue familiarity, favoritism, or disrespect is intended.

[3]  DEL. CODE ANN., tit. 18 § 3902 (2020).

[4]  Compl. at ¶¶ 13, 14.

[5]  *Drenth v. Colonial Penn Ins. Co.*, 1997 WL 720459, at *3 (Del. Super. Ct. Sept. 15, 1997).

substance requisite of such an offer.[6]  And where an insurer fails to meet its burden of making a required meaningful offer of UM/UIM coverage, then it is deemed to have made "a continuing offer for additional insurance, which the insured may accept even after the insured's accident."[7]  Erin is now seeking—as a result of Liberty Mutual's failure to make a meaningful offer of additional UM/UIM coverage at the time she removed her late husband from their insurance policy—to accept Liberty Mutual's continuing offer for additional insurance and reform her automobile policy to increase its UM/UIM coverage.

The issue before the Court is whether Liberty Mutual communicated to Erin a meaningful offer of additional UM/UIM coverage after a material change to her policy occurred in February 2014 when Erin removed her late husband, Raymond C. Radulski ("Ray"), from their insurance policy.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. THE RADULSKIS' POLICY WITH LIBERTY MUTUAL

On June 23, 2010, Liberty Mutual entered into a policy of automobile insurance with Erin and her husband as the policyholders.[8]  As with most young families, one person, Ray, took on the chore of handling the insurance policies for the Radulski household.  And so, he took responsibility for communicating with Liberty Mutual and managing the specific auto insurance policy at issue in this

---

[6]  *Mason v. United Servs. Auto. Ass'n*, 697 A.2d 388, 393-94 (Del. 1997).

[7]  *Brintzenhoff v. Hartford Underwriters Ins. Co.*, 2004 WL 2191184, at *1 (Del. Super. June 4, 2004) (quoting *Shukitt v. United Servs. Auto. Ass'n*, 2003 WL 22048222, at *3 (Del. Super. Ct. Aug. 13, 2003)); *Drenth*, 1997 WL 720459, at *3.

[8]  Pl.'s Mot. for Partial Summ. J. at ¶ 6.

matter.[9]  He signed the automobile insurance policy for both himself and Erin.[10]  He received and dealt with policy renewals.[11]  In sum, during their time together, Erin had little reason to and never did review the auto insurance papers; "it was [Ray]'s job."[12]  Ray had told Erin that their automobile policy with Liberty Mutual provided $250,000/$500,000 in UM/UIM coverage.[13]

On February 22, 2014, only weeks after his thirty-first birthday, Ray was suddenly taken from Erin without warning.[14]  Steeling through her unexpected loss, Erin set about putting their affairs in order.  Just four days after his passing, on February 26, 2014, Erin telephoned a Liberty Mutual representative to report Ray's death.[15]  The next day, Liberty Mutual sent Erin a new Policy Declarations information packet removing Ray from their policy.[16]  The February 27, 2014 Liberty Mutual Policy Declarations information packet was just that—an information packet documenting the changed driver information.  There was no

---

[9]  *Id.* at Ex. E at 52-54, 57-59 (Radulski Dep., Oct. 30, 2019).

[10]  *Id.* at 52-54, 56-57.

[11]  *Id.* at 57-59.

[12]  *Id.* at 52, 57.

[13]  *Id.* at 53-54, 57, 59-60.

[14]  Pl.'s Mot. for Partial Summ. J. at ¶ 7; *id.* at Ex. G (2011 Policy Declarations, Driver Information).

[15]  *Id.* at ¶ 7.

[16]  *Id.* at Ex. F.

integrated or accompanying offer to provide new or additional UM/UIM coverage, or any other coverage.[17]

It was not until late June of that year that Liberty Mutual next communicated with Erin, mailing her a Renewal Packet that contained Declaration Pages, Policy Amendments, and a Coverage Offer Form (collectively, the "2014 Renewal Packet").[18]

About fifteen pages into that renewal packet, the Coverage Offer Form refers to the opportunity to obtain additional UM/UIM coverage if one currently has such.[19] It instructs the policyholder to "contact your local Liberty Mutual Sales Office" for the calculation of the additional cost of acquiring such additional UM/UIM coverage.[20] It also tells the insured, "**If we do not receive a call within 15 days, the coverage previously selected will stay in effect.**"[21]

## B. CALAMITY HITS ERIN AGAIN

On December 30, 2016, hard fate struck Erin again. She was the driver of a vehicle smashed by a tractor-trailer and was badly hurt as a result of the wreck.[22] The tractor-trailer that hit Erin fled the collision scene. And neither the truck nor the

---

[17] *Id.*

[18] Def.'s Mot. for Summ. J., Ex. E.

[19] *Id.* (Coverage Offer Form).

[20] *Id.*

[21] *Id.* (bold in original).

[22] Pl.'s Mot. for Partial Summ. J. at ¶ 1.

driver was ever identified.[23]

To cover the damages and medical expenses she incurred as a result of the unidentified hit-and-run trucker's misdeed, Erin turned to her Liberty Mutual auto policy. It was then that she discovered that policy provided liability coverage of $250,000/$500,000; but, it included only $100,000/$300,000 in UM/UIM coverage. Had she known that limit had only ever been $100,000/$300,000, Erin says she would have—as permitted by law and industry practice—brought her UM/UIM coverage up to the same $250,000/$500,000 level as her liability coverage.[24]

## C. THE PARTIES' CROSS-MOTIONS

In 2019, Erin commenced this declaratory judgment action and, through her Complaint, requested that this Court reform the insurance policy to provide UM/UIM coverage in the amount of $250,000/$500,000 and apply such coverage retroactively to the date of the accident.[25] Liberty Mutual answered Erin's complaint and, after discovery, the parties filed the cross-motions for summary judgment. The Court had heard argument and received the parties' supplemental filings. So the cross-motions were ripe for and then decided.

---

[23] *Id.*

[24] *Purnell-Charleston v. State Farm Fire Cas. Co.*, 2011 WL 3812564, at *1 (Del. Super. Ct. Aug. 29, 2011), *aff'd*, 2013 WL 455171 (Del. Feb. 6, 2013) ("It is presumed that the policyholder would accept this offer."); *Knapp v. United Servs. Auto. Ass'n*, 1997 WL 719340, at *3 (Del. Super. Ct. Sept. 12, 1997) ("[A]bsent compliance with § 3902(b), the offer remains open even if the insurer can show that the insured would have declined coverage."), *rev'd on other grounds*, 708 A.2d 631 (Del. 1998); *Eskridge v. Nat'l Gen. Ins. Co.*, 1997 WL 127959, at *6 (Del. Super. Ct. Feb. 18, 1997) ("Where there is no evidence to the contrary, it is presumed that the insured would accept this offer.").

[25] Compl. at ¶¶ 13, 14.

## II. STANDARD OF REVIEW

This Court cannot grant any party's motion for summary judgment under Delaware Superior Court Civil Rule 56 unless no genuine issue of material fact exists and that party is entitled to judgment as a matter of law. [26] Summary judgment will not be granted if there is a material fact in dispute[27] or if "it seems desirable to inquire thoroughly into [the facts] to clarify the application of the law to the circumstances."[28] The burden is on the moving party to demonstrate its claim is supported by undisputed facts.[29] If that burden is met, the non-moving party must demonstrate that "there is a genuine issue for trial."[30] And in determining whether there is, the Court must view the facts in the light most favorable to that non-moving

---

[26] Del. Super. Ct. Civ. R. 56; *Motors Liquidation Co. DIP Lenders Trust v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. Ct. June 19, 2017), *aff'd sub. nom*, *Motors Liquidation Co. DIP Lenders Trust v. Allstate Ins. Co.*, 2018 WL 3360976 (Del. July 10, 2018).

[27] A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *see also In re Asb. Litigation*, 2006 WL 3492370, at *3 (Del. Super. Ct. Nov. 28, 2006); *Farmers Bank of Willards v. Becker*, 2011 WL 3925428, at *3 (Del. Super. Ct. Aug. 11, 2011).

[28] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962).

[29] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979); *CNH Indus. Am. LLC v. Am. Cas. Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. Ct. June 8, 2015).

[30] Del. Super. Ct. Civ. R. 56(e). *See CNH Indus. Am. LLC,* 2015 WL 3863225, at *1 ("If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder."); *see also Tanzer v. Int'l Gen. Indus., Inc.*, 402 A.2d 382, 385 (Del. Ch. 1979) ("If the movant puts in the record facts which, if undenied, entitle him to summary judgment, the burden shifts to the defending party to dispute the facts by affidavit or proof of similar weight.").

party.[31]  Lastly, the Court accepts as true the parties' factual stipulations.[32]

While the Court may not be able to grant summary judgment "if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record,"[33] "a matter should be disposed of by summary judgment whenever an issue of law is involved and a trial is unnecessary."[34]

These well-established standards and rules for summary judgment apply in full when the parties have filed cross-motions for summary judgment.[35]  Cross-motions for summary judgment certainly "are not *per se*" concessions that no material factual disputes exist.[36]  But, where cross-motions for summary judgment are filed and neither party argues the existence of a genuine issue of material fact,

---

[31]  *Judah v. Del. Trust Co.*, 377 A.2d 624, 632 (Del. 1977) ("The facts must be viewed in the manner most favorable to the nonmoving party . . . with all factual inferences taken against the moving party and in favor of the nonmoving party.").

[32]  *S. G. Williams of Dover, Inc. v. Diamond State Vinyl, Inc.*, 430 A.2d 794, 796 (Del. Super. Ct. 1981).

[33]  *CNH Indus. Am.*, 2015 WL 3863225, at *1.

[34]  *Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999); *Brooke v. Elihu-Evans*, 1996 WL 659491, at *2 (Del. 1996) ("If the Court finds that no genuine issues of material fact exist, and the moving party has demonstrated his entitlement to judgment as a matter of law, then summary judgment is appropriate.").

[35]  *Spivey v. USAA Casualty Ins. Co.*, 2017 WL 3500402, at *4 (Del. Super. Ct. Aug. 15, 2017) ("[T]he standard of review on cross-motions for summary judgment is equivalent to the situation where one party moves for summary judgment."); *Verizon Commc'ns Inc. v. Illinois Nat'l Ins. Co.*, 2017 WL 1149118, at *5 (Del. Super. Ct. Mar. 2, 2017); *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. Ct. May 31, 2013) (citing *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1050 (Del. Super. Ct. 2001)).

[36]  *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

"the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the[m]."[37] So, "the questions before this Court are questions of law not of fact, and the parties by filing cross motions for summary judgement have in effect stipulated that the issues raised by the motions are ripe for a decision on the merits."[38]

## III. DISCUSSION

The key to resolving the parties' dispute here is determining whether Liberty Mutual ever communicated to Erin the meaningful offer of additional UM/UIM coverage that Delaware law (*i.e.*, 18 *Del. C.* §3902(b)) required.

### A. SECTION 3902(b), ITS PURPOSE, AND THE COURT'S ENFORCEMENT THEREOF

Section 3902(b) of Title 18 reads, in pertinent part,

> Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.

This Court's decision in *Shukitt v. United Services Automobile Association* is oft-cited for its succinct explication of § 3902(b)'s purpose:

> An objective of § 3902(b) is to give those who carry liability coverage in excess of the minimum statutory amount the full opportunity to carry uninsured (and now underinsured) coverage in an equal amount. The duty which is imposed by statute is the duty to offer such insurance so that the insured can make an

---

[37] Del. Super. Ct. Civ. R. 56(h).

[38] *Health Corp. v. Clarendon Nat. Ins. Co,* 2009 WL 2215126, at *11 (Del. Super. Ct. July 15, 2009).

> informed decision. An informed decision can be made only if all of the facts reasonably necessary for a person to be adequately informed to make a rational, knowledgeable and meaningful determination have been supplied.
>
> The prospect of overbearing is sufficiently great that section 3902(b) was enacted to require dissemination of important information which many consumers, other than the most diligent, might not discover. The statute's purpose is to ensure that responsible Delaware drivers—i.e. drivers who maintain responsible limits of liability coverage—can avail themselves of equal UM/UIM coverage in the event they encounter less responsible tortfeasors.[39]

To achieve this purpose, "Delaware courts have strictly enforced Section 3902(b)'s requirement that insurance carriers clearly communicate offers of additional UM/UIM coverage to their policyholders."[40]

### B. LIBERTY MUTUAL'S DUTY UNDER SECTION 3902(b)

The duty to convey a meaningful offer of UM/UIM coverage arises "when a new policy, other than a renewal[,] is offered, and a new policy is issued when there is a material change in the policy."[41] "Consonant with Delaware law, the offer of additional coverage must be made whenever the policy is changed in such respects as the vehicle insured, the coverage provided, and/or the identity of the named

---

[39] 2003 WL 22048222, at *3 (Del. Super. Ct. Aug. 13, 2003) (internal quotations and citations omitted).

[40] *Brintzenhoff*, 2004 WL 2191184, at *1 (quoting *Shukitt*, 2003 WL 22048222, at *3)).

[41] *Drenth*, 1997 WL 720459, at *2.

insured."[42]  No doubt, a material change occurred here when Ray passed and Erin had to have him removed from their insurance policy—that is, when the policy changed with respect to the identity of the named insured.[43]

The insurance carrier must offer the insured additional coverage "'so that the insured can make an informed decision' regarding the limits of coverage."[44]  "An informed decision can be made only if all of the facts reasonably necessary for a person to be adequately informed to make a rational, knowledgeable and meaningful determination have been supplied."[45]  So, when Liberty Mutual removed Ray from the Radulskis' insurance policy, Liberty Mutual incurred a concurrent duty to make a meaningful offer of additional uninsured/underinsured motorist coverage to Erin. And now, Liberty Mutual has the burden of demonstrating to the Court that it did so.[46]

---

[42]  *State Farm Mut. Auto. Ins. Co. v. Arms*, 477 A.2d 1060, 1066 (Del. 1984).

[43]  [LIBERTY MUTUAL]:  . . . What I want to address more specifically, Your Honor, is the argument about February of 2014, which is when the material change to the policy was made.

THE COURT:  So you agree that is material change?

[LIBERTY MUTUAL]:  No question.

Oral Arg. Tr., Feb. 19, 2020, at 16 (D.I. 28).

[44]  *Mason v. United Servs. Auto. Ass'n*, 697 A.2d 388, 393 (Del. 1997) (quoting *Morris v. Allstate Ins. Co.*, 1984 WL 3641, at *1 (Del. Super. Ct. July 10, 1984)).

[45]  *Id*. (quoting *Morris*, 1984 WL 3641, at *1).

[46]  *Id*. at 394 ("USAA has therefore failed to meet its burden to show that it made a meaningful offer of additional uninsured motorist coverage at the time of [its insured]'s material policy

To have communicated a meaningful offer, and thus have provided Erin with the basis to make an informed decision, Liberty Mutual was required to give: "(1) the cost of the additional coverage; (2) a communication to [her] which clearly offers [UM/UIM] coverage; and (3) an offer for uninsured motorist coverage made in the same manner and with the same emphasis as the insurer's other coverage."[47] If the Liberty Mutual fails to meet its burden to have done so, then it is deemed to have extended "a continuing offer for additional insurance, which [Erin] may accept even after [her] [] accident."[48]

### C. LIBERTY MUTUAL DIDN'T MAKE THE REQUIRED MEANINGFUL OFFER TO ERIN

So, did Liberty Mutual ever make a meaningful offer to Erin that conformed to § 3902(b)'s requirements? It did not.

#### 1. *The Timeliness Factor*

A meaningful offer is one that is timely made.[49] Indeed, "timeliness of the offer is of the utmost importance in considering whether a meaningful offer has been

---

changes."); *Shukitt*, 2003 WL 22048222, at *3 ("[T]he insurer bears the burden of demonstrating compliance with Section 3902(b)."); *Drenth*, 1997 WL 720459, at *3 ("[T]he statute [§ 3902(b)] and case law require an offer *each time* a material change is made.").

[47] *Brintzenhoff*, 2004 WL 2191184, at *1 (quoting *Shukitt*, 2003 WL 22048222, at *3)).

[48] *Id.*

[49] *See Mason*, 697 A.2d at 393-94 (insurer had burden of showing it made a meaningful offer of additional uninsured motorist coverage "at the time of [insured's] material policy changes").

communicated."[50] And "to be made in a timely manner, the offer must be communicated at or near the time a material change is made to the policy."[51]

Liberty Mutual suggests that no matter any defect the Court may find in the changed-information document mailed to Erin five days after Ray's death, its transmission of the June 2014 Renewal Packet should be deemed the meaningful offer of additional UM/UIM coverage required.[52] Not so.

Timeliness may not be ***the** sine qua non* of the offer required by § 3902(b) and Delaware case law, but it certainly is a salient factor to be considered.[53] Assuming for a moment that the renewal packet met the informational requirements of a meaningful offer, it could only have been received by Erin some four months after her policy change. And this seems simply too tardy to be considered the timely communication that § 3902(b) and Delaware case law calls for.[54] So the Court cannot deem the June 2014 Renewal Packet—nor any like renewal packets sent in subsequent years—to be an offer "at or near the time of" Erin's material policy change. And the untimeliness of the June 2014 renewal packet—and any like renewal packets sent in subsequent years—certainly weighs against its (and their) meaningfulness.

---

[50] *Shukitt*, 2003 WL 22048222, at *5 (citing *Mason*, 697 A.2d at 394).

[51] *Id.*; *Mason*, 697 A.2d at 394.

[52] Def.'s Open. Br. at p. 6.

[53] *Shukitt*, 2003 WL 22048222, at *5.

[54] *Mason*, 697 A.2d at 394 (an offer made "many months" after a material change to an insurance policy is not timely).

### 2. *Liberty Mutual's February 27th Communication was timely, but it included none of the information required of a "Meaningful Offer."*

Liberty Mutual has suggested its February 27, 2014 update of policy declarations and documents[55] met its affirmative duty to make the offer. "Delaware courts have strictly enforced Section 3902's requirement that insurance carriers clearly communicate offers of additional UM/UIM coverage to their policyholders."[56] Again, a meaningful offer requires: "(1) the cost of the additional coverage; (2) a communication to the insured which clearly offers [UM/UIM] coverage; and (3) an offer for uninsured motorist coverage made in the same manner and with the same emphasis as the insurer's other coverage."[57] The February 2014 policy update Liberty Mutual sent to Erin contains none of this.

### 3. *The June 2014 Renewal was neither timely nor content-sufficient enough to be deemed a "Meaningful Offer."*

Liberty Mutual has suggested that Erin's ability and failure to accept any potential offer of additional UM/UIM coverage via the June 2014, June 2015, and June 2016 renewal packages—which, it claims, met the informational requirements of a "meaningful offer"—purges its February 2014 failure and extinguishes Erin's right to later relief in the form of reformation.[58] Again, not so.

---

[55] Pl.'s Mot. for Partial Summ. J., Ex. F.

[56] *Spivey*, 2017 WL 3500402, at *4 (internal quotations and citations omitted).

[57] *Hudson v. Colonial Penn Ins. Co.*, 1993 WL 331168, at *3 (Del. Super. Ct. July 21, 1993).

[58] Oral Arg. Tr., Feb. 19, 2020, at 21 (quoting *Morris*, 1984 WL 3641, at *3).

The timely meaningful offer requirement is meant to ensure an insurance consumer receives important information so as to make an informed decision at a critical juncture in her relationship with her insurer. Erin's situation is emblematic of why that requirement is so strictly enforced and should not be so easily excused by the insurer's resort to the more repetitive and mundane communications that occur in the insured-insurer relationship.[59] As this Court has observed, "[a]n untimely offer made months or even years later in a policy renewal cannot cure the defective offer."[60] This is particularly so when the policy renewal documents—like those sent by Liberty Mutual to Erin—didn't "offer the policyholder information [necessary] to assist in determining whether to accept the coverage in the first instance."[61]

The Court cannot agree that the record evidence produced shoulders Liberty Mutual's burden to show that these later communications made the meaningful offer contemplated in such circumstances. First, the June 2015 and June 2016 renewal packages have not been made part of the record here. Second, even if those renewal communications were mirror images of 2014's, they are insufficient.[62] One glaring deficiency: Liberty Mutual's "Coverage Offer Form"—buried some 15 pages deep

---

[59] *See Mason*, 697 A.2d at 394; *Shukitt*, 2003 WL 22048222, at *5 (observing that "policy renewals are mere continuations of an existing policy, [such that] an offer of additional insurance would have to be more prominently displayed to attract a policyholder's attention).

[60] *Shukitt*, 2003 WL 22048222, at *5.

[61] *Id.*

[62] *E.g. id.*

in a 25-page renewal package—doesn't provide the costs associated with additional coverage, but instead requires the already insured to dial-in for this information.[63]

### D. LIBERTY MUTUAL'S RULE 59(e) MOTION WARRANTS SOME CLARIFICATION

Liberty Mutual objects that the Court's October 28th decision seemingly suggested that an insurer's initial failure to make the offer required by § 3902(b) and Delaware case law "is irredeemable and can never be cured."[64] And this, Liberty Mutual says, is at odds with this Court's earlier decision in *Morris v. Allstate.*[65] In *Morris,* this Court held that a deemed continuing offer for additional insurance "is a continuing liability which remains with [the] defendant [insurance company] as long as it provides coverage to [its] plaintiff [insured] until [that] defendant [insurer] complies properly with 18 *Del. C.* §3902(b), or until defendant makes the offer which complies with 18 *Del. C.* §3902(b)."[66]

To clarify, the Court is not abrogating this specific holding from *Morris v. Allstate*. Nor is the Court now pronouncing a failure like Liberty Mutual's to be some unabsolvable statutory sin. No, what the Court has done is applied the record evidence adduced here to the law declared earlier and found Liberty Mutual has failed to carry its burden of demonstrating compliance with Section 3902(b).

To be sure, "Delaware courts have strictly enforced Section 3902(b)'s requirement that insurance carriers clearly communicate offers of additional

---

[63] Def.'s Mot. for Summ. J., Ex. E (Coverage Offer Form).

[64] Def.'s Mot. for Reargument, at 2.

[65] 1984 WL 3641 (Del. Super. Ct. July 10, 1984).

[66] *Id.* at *3.

UM/UIM coverage to their policyholders."[67]  The reasons for doing so have been well- and thoroughly explained.[68]  And so, the Court must be equally exacting when deeming any such initial failure purged by the insurer's own later curative act.  That corrective: (1) should be made timely to the realized failure; (2) must specifically inform the insured of what has triggered the offer of additional coverage; and (3) must meet all of the other substantive requirements of a "meaningful offer."[69]  Liberty Mutual's professed cure(s) did none of this.

### VI. CONCLUSION

Liberty Mutual did not make a meaningful offer of additional UM/UIM coverage to Erin within the meaning of 11 *Del. C.* § 3902(b).  Because the offer remains open and Erin is presumed to accept this offer, the Court will order reformation of her policy to reflect the increased UM/UIM coverage up to her liability coverage of $250,000 per person/$500,000 per accident.[70]  Accordingly, Erin's motion for summary judgment is **GRANTED**, and Liberty Mutual's cross-motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

cc: All Counsel via File and Serve

---

[67]  *Brintzenhoff*, 2004 WL 2191184, at *1 (quoting *Shukitt*, 2003 WL 22048222, at *3)).

[68]  *See, e.g., Shukitt*, 2003 WL 22048222, at *3-5 (explicating the policy considerations that animate Section 3902).

[69]  *See Hudson*, 1993 WL 331168, at *3 (setting forth the information specifically required in a "meaningful offer").

[70]  *Harding v. N.K.S. Distributors, Inc.*, 1991 WL 215757, at *3 (Del. Super. Ct. Oct. 1, 1991).